**Claud W. NESBIT, Appellant,**

v.

**W. O. EVERETTE, Appellee.**

**No. 15588.**

United States Court of Appeals Fifth Circuit.

Nov. 9, 1955.

Rehearing Denied Dec. 1, 1955.

C. I. Carey, Carey & Harrison, St. Petersburg, Fla., for appellant.

Geo. T. Shannon, Norman Stallings, Shackleford, Farrior, Shannon & Stallings, Tampa, Fla., for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and BROWN, Circuit Judges.

HUTCHESON, Chief Judge.

The suit was for damages resulting from the head end collision at 8:10 **at**

night of plaintiff's automobile with defendant's loaded truck-tractor and trailer, which unlighted and unprotected by flares, fusees, or other warnings, was parked on and obstructed the side of the highway down which plaintiff and his wife were traveling.

The claim was: that defendant in thus parking was guilty of gross negligence and carelessness and was violating the statute law of Florida; and that while the truck was thus parked, plaintiff and his wife, who in their automobile were approaching from the rear and were completely without notice, warning, knowledge, or information of any nature whatever of the presence of defendant's tractor and trailer, proceeded head on with full force directly into the rear end of the trailer, with the result that plaintiff's wife was killed and plaintiff suffered greatly disabling and painful injuries.

The defenses were: denials of plaintiff's charges and an affirmative defense that the plaintiff was himself guilty of negligence [1] proximately contributing to the injury.

The issues thus joined and tried to a jury, at the conclusion of plaintiff's case,[2]

---

1. (a) That it was plaintiff's duty under Florida law to so operate his automobile *as to be able to stop or control it* within the range of his vision and that plaintiff negligently violated this duty; (b) That plaintiff was at the time operating the automobile at a speed in excess of fifty miles per hour and therefore in violation of Section 317.22, F.S.A.; (c) that, in violation of Sec. 317.58, F.S.A., plaintiff was driving with headlights which were not of the intensity required by the statute, enabling them when lighted to reveal persons and vehicles at a distance of at least 350 feet ahead, and (d) that *immediately* prior to the time of the accident the defendant's tractor-trailer was within the range of plaintiff's normal headlight vision and that at such time the lights of a vehicle then driving south along the highway blinded him, and he thereafter failed to bring his car to a stop but dimmed his lights and proceeded with his vision thus restricted, and by his negligent conduct proximately contributed to his injury.

2. Taken most strongly for the plaintiff, these are the facts:

On Dec. 15, 1953, between eight and eight-thirty P.M., appellant was about 23 miles north of Tampa in the open country, driving his automobile north on State Highway No. 41 from Tampa, at from 45 to 50 miles an hour. 59 years of age and in good health, he had been driving automobiles from 40 to 45 years. He was a retired chief of the St. Petersburg Fire Department, which office he held for 17 years.

While thus driving, at the time and place stated, appellant's automobile ran head-on into the rear end of appellee's truck tractor and trailer, demolishing his automobile, severely and permanently injuring him and killing his wife.

The night was dark, there was no rain or fog or smoke on the highway.

Appellee's truck tractor and trailer was stationary on the highway, the rear end extending 4' 7" over on the pavement. There was a 23 foot shoulder available for parking to the right and adjacent to the paved part of the highway. The tractor engine was in running condition. No lights, fusees, flares, flags or other warning had been placed on the highway by appellee, and there were no lights on the truck, tractor or trailer, either side, front or rear, and no fusees, flags, lights or warning signals were in or on the truck tractor or trailer. The truck tractor and trailer were old, its color was black or dark or green. It was not visible to other users of the highway. It was never in the range of vision of appellant until after the collision; nor was it in the range of the vision of Jack Richardson who approached the same tractor and trailer from the north (meeting it) at the same time and place.

Plaintiff's testimony: "As I went north, and before I hit the tractor, I had bright lights—I noticed this car (coming south). It had bright lights. They glared. They partially blinded me. I cut my lights from bright to dim—and in the act of cutting mine—my wife spoke—and immediately I was in the back end of the truck. That was the first notice or indication that there was a truck in front of me. I never saw anything. I never did see the truck. There was no one to the rear of the truck flagging traffic. There were no signs, warnings or signals of any nature that told me that there was a truck standing ahead of me on the highway. It happened quicker than I am now telling you. I was in the back end of the truck. I did not have time to do anything. I image the lights were shining

defendant moved for a directed verdict on two grounds: (1) that no negligence on the part of the defendant was shown; and (2) that the evidence conclusively shows that plaintiff was guilty of contributory negligence.

The district judge, granting the defendant's motion on the second ground, thus stated his reasons for doing so:

"The Court will grant the motion on the second ground. The law in Florida is, and the Florida Supreme Court has held, that it is the duty of a motor vehicle driver at all times, day or night, to operate his motor vehicle so that he can stop or control it within the range of his vision. The duty was upon the plaintiff in this case to have his automobile under such control and to have operated it at such speed that he could have stopped within the range of his vision. Failing to do that, he was guilty of contributory negligence.

"It is not that the defendant or the driver of the defendant's vehicle was not guilty of negligence. The evidence shows that he was, but the law in Florida is that where both parties, both plaintiff and defendant, are guilty of negligence, then the plaintiff cannot recover.

"The evidence in this case shows beyond question that the plaintiff failed to have his automobile under such control and failed to operate it at such speed that he could have—and because he could have he should have—stopped it within the range of his vision. When he became blinded, he should have come to a complete stop if he was unable to see any distance ahead. This is the law of Florida and because contributory negligence defeats plaintiff's right to recover, there can be no verdict for the plaintiff in this case from the testimony as it now stands."

Plaintiff, appealing from the judgment entered thereon, is here insisting that, while the district judge kept to the ear the promise of the Florida law, with respect to the defense of contributory negligence vel non, in circumstances of the general kind presented here, he broke it to the hope by stating the duty imposed upon plaintiff not as it really is, a duty to exercise reasonable care, but as an absolute duty to avoid collision, and, in doing so, he greatly erred.

We agree with plaintiff that this is so, and that it is this which has caused the confusion in this and other cases decided under Florida law. A reading of the opinion of the Supreme Court of Florida in Townsend Sash Door & Lumber Co. v. Silas, 82 So.2d 158, 159, will plainly show that this is so. There in a case similar to, but not identical with, this one, where it was contended that a verdict should have been directed against plaintiff upon the ground that as matter of law her decedent was guilty of contributory negligence, the Supreme Court said:

"Contributory negligence being an affirmative plea, the burden of proof was upon the defendant to establish by a preponderance of evidence that the deceased contributed directly in some appreciable degree to the fatal occurrence.

"The jury heard the evidence, evaluated the credibility of the witnesses who testified and, under their prerogatives, found that defendant's driver was the sole proximate cause of the accident.

"The record reveals substantial competent testimony upon which a jury, as reasonable men, could have

---

in my eyes to some extent. It was all done so suddenly I could not tell you other than when I passed him (the man standing on the side of the road) and the reflection of the lights—that's the time when I hit the back end of the truck. It was all done quicker than seconds. It was quicker than I am telling you now, I was in the back end of the truck. After I was partially blinded I did not have time to drive out on the side of the road and park. I did not have time to do anything."

predicated verdicts in favor of plaintiffs. From the physical facts as testified to in the trial the deceased was placed in a critical and perilous position and the jury, in a logical determination of all the testimony, could have reasonably concluded that the failure of defendant's driver to respect even the simple precautions to protect his fellow travelers, was the sole proximate cause resulting in death to the deceased."

Further and even more conclusive proof is furnished by the concurring opinion in that case in which the writer, citing Ferlita & Sons, Inc., v. Beck, 143 Fla. 509, 197 So. 340; Petroleum Carrier Corp. v. Robbins, Fla.1951, 52 So.2d 666; and Macasphalt Corp. v. Murphy, Fla.1953, 67 So.2d 438; relied on by the district judge below and appellee here, goes on to say:

"The cases are cited as authority for the general proposition that a motorist must drive his automobile at such speed as to be able to stop or control his vehicle within the range of his vision. It was held in each of these cases that the undisputed evidence showed that the injured party was guilty of negligence which contributed to the proximate cause of his injury as a matter of law. From the decisions reached in the cases cited, it should not be concluded that the so-called 'range of vision rule' is always and in every instance a rule of law unrelated to the particular facts that will bar recovery absent a consideration of the facts and circumstances of each case. Clearly the rule must be applied in the light of the circumstances before the Court in each case.

"We further point out that in the cases relied upon by the appellant and cited above, the Court considered all of the attendant and related circumstances and came to the conclusion that in view of such circumstances the injured party was guilty of contributory negligence as a matter of law because of the fact that the evidence on the subject was undisputed. In none of the cases did the Court go astray of the established rule that where the evidence is in conflict or where reasonable minds might differ as to the conclusions and appropriate inferences to be drawn therefrom, the problem of resolving the doubts and conflicts is the responsibility of the jury. Whether the driver of an automobile has maintained adequate control of his vehicle within the range of his vision as required by the peculiar circumstances of each particular case is a question of fact to be weighed and considered by the jury, unless there is no conflict on the subject as was determined in the three cases cited. The so-called 'range of vision' rule is actually no different from any other rule of conduct imposed by law upon the operators of motor vehicles. If the evidence is undisputed, the question of negligence or contributory negligence becomes one of law. If the evidence is in dispute and presents to the minds of reasonable men potentially different conclusions and inferences in the light of the circumstances of a particular case, then the problem of resolving the conflicts is the responsibility of the jury."

This is not to say that the able and distinguished district judge, in stating his reasons in this case for instructing a verdict, was consciously stating that the plaintiff was held as matter of law to an absolute duty to look out for his own safety for he not only stated plaintiff's supposed breach as contributory negligence but in his further discussion of the issues before him dealt with the corresponding duties of plaintiff and defendant in terms of negligence.

■ It is to say, though, that he was undoubtedly confused as to the state of the law by the claimant's urging upon him of the three Florida cases above cited as stating the " 'range of vision' " rule as an absolute rule of law, and that

he was thereby led into the error of taking the case from the jury. In doing this, he erroneously placed himself in the position of invading the province of the jury and of settling for himself as matter of law grave and difficult questions arising out of human conduct and action under stress and in an emergency created by admitted negligence acts of defendant greatly pregnant with hidden and unsuspected dangers to plaintiff and others traveling the highway.

We are in no doubt that the rule controlling here is the same in Florida as in other states, that "where the evidence is in conflict or where reasonable minds might differ as to the conclusions and appropriate inferences to be drawn therefrom, the problem of resolving the doubts and conflicts is the responsibility of the jury" and that it was error to instruct a verdict in this case.

The judgment is reversed and the cause is remanded for further and not inconsistent proceedings.